IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, a Project of | : | |
| THE HUMAN RIGHTS DEFENSE | : | |
| CENTER, a Not for Profit Corporation, | : | |
| Incorporated in the State of | : | |
| Washington, | : | |
| | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | No. 3:12-CV-00125 (CAR) |
| JOE CHAPMAN, the Sheriff of | : | |
| Walton County, Georgia, and | : | |
| WADE HARRIS, Jail Commander | : | |
| for Walton County Jail, in their | : | |
| official and individual capacities, | : | |
| | : | |
|      Defendants. | : | |
| _____ | : | |

## ORDER ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Presently before the Court is Prison Legal News's motion to enjoin Sherriff Joe Chapman and Walton County Jail Commander Wade Harris from enforcing certain mail policies and procedures which restrict its means of communication with Walton County Jail inmates.  Prison Legal News ("PLN") asserts that Defendants' policies unlawfully burden PLN's free speech and due process rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.  Accordingly, PLN seeks injunctive relief against Defendants in their official capacities under 42 U.S.C. § 1983.

Having considered the merits of PLN's claims, Plaintiff's Motion for Preliminary Injunction [Doc. 7] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants are hereby **ENJOINED** from enforcing the current de facto ban on PLN's self-titled periodical, *Prison Legal News*. All other requests for injunctive relief are **DENIED** as follows.

## BACKGROUND

PLN describes itself as a project of the Human Rights Defense Center, a non-profit corporation, whose "core mission" includes education, advocacy, and outreach to prisoners in support of basic human rights.[1]  To that end, PLN publishes the self-titled *Prison Legal News*, a monthly journal of corrections news and analysis, which PLN claims is widely circulated to attorneys, judges, and prisoners, including inmates in the Georgia Department of Corrections.  In addition to this softbound monthly journal, PLN publishes and distributes other books about the criminal justice system and legal issues affecting prisoners.  When "appropriate," PLN also engages in litigation to express its sociopolitical ideals.[2]

During the past year, PLN has mailed various publications and correspondence to inmates at the Walton County Jail (the "Jail").  All of these mailings were addressed to specific inmates in response to "individualized criteria," such as paid subscriptions

---

[1] PLN Complaint at 2 [Doc. 1].
[2] *Id*. at 4.

2

or requests for trial subscriptions.[3]  Since January 2012, PLN reports that Defendants have censored the following: at least 59 issues of *Prison Legal News*; at least 2 copies of *Protecting Your Health and Safety*, a book; at least 36 copies of PLN's informational brochure; and at least 7 subscription renewal letters.  In addition, PLN claims that the Defendants rejected at least 27 letters sent to various inmates by PLN's attorney, Lance T. Weber.  When the Jail censors PLN's mail, it returns the objectionable item with a stamp on the front that states "REFUSED" / "UNAUTHORIZED MAIL" / "RETURN TO SENDER" with the date and "WALTON COUNTY JAIL."[4]  PLN contends that these censorship decisions and the Jail's mail policies unlawfully infringe on its freedom of speech and its right to sufficient due process under the First and Fourteenth Amendments to the United States Constitution.

Jail employees censor mailings in accordance with the Jail's policies, which are promulgated by the sheriff of Walton County, Defendant Joe Chapman, and implemented by the Jail's commander, Defendant Wade Harris.  Two Jail employees, Dorothy Crawford and John Grabowski, sort privileged and non-privileged inmate mail received by the Jail on a daily basis, each Monday through Friday.  Privileged mail, which is "mail clearly marked as being sent from the inmate's legitimate attorney of record or their staff, court officials and the media," is not read or otherwise censored by the employees; it is opened by the inmate in the presence of one or two

---

[3] PLN Reply at 18 [Doc. 24].
[4] PLN Complaint at 8 [Doc. 1].

employees who perform a cursory, physical search for contraband before turning the mail over to the inmate.[5]  Although the written policy restricts this privilege to the attorney "of record," Defendants allege that the Jail's practice is more generous: "the jail staff is supposed to view any mail bearing the return address of an attorney or law firm as privileged mail within the meaning of the policy."[6]

Any other, non-privileged mail must be on postcards, whether incoming or outgoing, unless the mail "is for the receipt of a money order for commissary purposes … or there is documented justification for a limitation of mail privileges."[7]  These non-privileged postcards are "subject to be read by facility staff" who censor objectionable content pursuant to the Jail's "Censorship Guidelines."[8]  When censored, the Guidelines direct the Jail employee to forward the postcard to Defendant Harris or his designee for review before notifying both the addressee-inmate and author of the Jail's censorship.  Thereafter, the author has seven days to appeal the decision through a due process hearing with Defendant Harris or another uninterested third party who did not participate in the original censorship decision.  Since its implementation on November 1, 2010, Defendants allege that the "postcard-only" policy saves each of the two Jail employees two to three hours per day.

On October 1, 2012, ten days after PLN filed suit in this Court, Defendants

---

[5] Jail Policies & Procedures ("P&P") 5.16(II)F-G [Doc. 21-2 at 2].
[6] Defs. Response at 5 [Doc. 21].
[7] PLN Prelim. Inj. at 7 [Doc. 7].
[8] Jail P&P 5.16(II)N [Doc. 21-2 at 3].

revised several contested mail policies. Although the postcard-only policy and censorship review remain unchanged, books and periodicals, magazines, and newspapers are governed by new, distinct policies. Under the previous policy, the Jail wholly prohibited inmates from receiving any of the aforementioned publications through the mail. Rather, these reading materials were exclusively available to inmates through a library cart circulated within the Jail. The new policy permits inmates to individually order softbound books directly from a bookstore or publisher. However, inmates are still prohibited from receiving periodicals, magazines, and newspapers on an individual basis.[9] Defendants state that "a survey is underway to obtain inmate preferences about what type of magazines, newspapers, or periodicals inmates would like to have available and when those materials are selected, they will be available through the cart which has previously been used for paperback books."[10]

## DISCUSSION

PLN claims several of Defendants' current mail policies unlawfully infringe on its right to communicate with the Jail's inmate population and its right to appeal the Jail's censorship decisions, in violation of the First and Fourteenth Amendments to the United States Constitution. Therefore, PLN requests that the Court (a) enjoin Defendants from censoring PLN's correspondence contained in envelopes; (b) enjoin Defendants from censoring PLN's periodical, *Prison Legal News*; (c) enjoin Defendants

---

[9] Defs. Response at 8 [Doc. 21].
[10] *Id.*

5

from censoring PLN's books; (d) enjoin Defendants from censoring legal mail from PLN's attorneys; and (e) order Defendants to provide PLN with sufficient procedural due process in relation to all censorship decisions.   In answer, Defendants contend several of PLN's claims fail because the Jail's current, revised mail policies resolve several of PLN's complaints.   Alternatively, Defendants contend that each of the challenged policies survives constitutional scrutiny given the Jail's legitimate penological interests and preexisting procedures.   The Court addresses each of these arguments in turn.

**Defendants' Mootness Defense**

As a preliminary matter, Defendants argue that portions of PLN's Motion for Preliminary Injunction are moot in light of the Jail's newly-adopted mail policies. In particular, Defendants claim that these revised policies may provide inmates' access to *Prison Legal News* through the library cart and otherwise alter the Jail's censorship notice and appeal procedures. [11]   A claim is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[12]   In other words, "[i]f events that occur subsequent to the filing of a lawsuit … deprive the court of the ability to give the plaintiff … meaningful relief, then the case is moot and must

---

[11] Defendants also allege that the new book policy similarly moots PLN's claims as to those publications. The Court declines to address this issue given the current record and the Court's findings detailed below.
[12] *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal quotation marks and citation omitted).

be dismissed."[13]   Indeed, mootness deprives the Court of its jurisdiction as "[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion."[14]   Notwithstanding the revisions to Defendants' mail policies, PLN's claims are not moot because several areas of dispute remain unresolved.

First, although Defendants' revised policy may offer inmates general access to PLN's periodical, the Court agrees with PLN's assertion that the "mere possibility that some of PLN's periodicals will be made available to some inmates" is constitutionally deficient.[15]   Moreover, the Court is not convinced that this "remedy" ensures that "the allegedly wrongful behavior could not reasonably be expected to recur."[16]   Finally, Defendants' revisions have not altered the censorship notice and appeal procedures PLN challenges in its due process claim.   Accordingly, Defendants do not carry the "formidable burden" of a mootness defense, and the Court must consider PLN's request for injunctive relief.[17]

**PLN's Request for Injunctive Relief**

A preliminary injunction is an "extraordinary and drastic remedy that should not be granted unless the movant carries its burden of persuasion."[18]   PLN, as the movant, must establish all four of the following prerequisites to receive injunctive

---

[13] *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (per curiam).

[14] *Id.*

[15] PLN Reply at 2 [Doc. 24].

[16] *See United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968).

[17] *See Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000).

[18] *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001).

relief: (1) PLN's claim(s) have a substantial likelihood of success on the merits; (2) PLN will suffer irreparable injury unless the injunction issues; (3) the threatened injury to PLN outweighs whatever damage the proposed injunction may cause Defendants and (4) if issued, the injunction would not be adverse to public interests.[19]  The decision to grant or deny injunctive relief is within the sound discretion of the trial court.[20] Bearing this standard in mind, the Court applies each of these factors to PLN's requests.

## I.  *First Amendment Claims*

PLN first claims Defendants' mail policies unconstitutionally restrict its freedom to communicate with the Jail's population by imposing arbitrary and unnecessary restrictions on the form of PLN's correspondence.  Although prison walls do not extinguish a free citizen's or even a publisher's right to communicate with inmates, this right is not absolute.[21]  Instead, this First Amendment interest must be balanced with the unique conditions and needs of the penal system.[22]  Courts have long recognized "(1) the difficulty of running a prison, (2) the separation of powers concerns when a federal court assumes a function (prison administration) entrusted to the legislative and executive branches, and (3) the need for federal courts to accord

---

[19] *ACLU v. Miami-Dade Cnty.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

[20] *See Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993).

[21] *See Thornburgh v. Abbot*, 490 U.S. 401, 407-08 (1989) ("[T]here is no question that publishers who wish to communicate with those who, through subscription, willingly seek their point of view[,] have a legitimate First Amendment interest in access to prisoners."); *Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

[22] *Turner*, 482 U.S. at 84-85.

deference to state authorities."[23]   Accordingly, a prison regulation may impinge on a publisher's freedom of speech if the Court determines that "it is reasonably related to legitimate penological interests."[24]

To determine whether a jail's content-neutral regulation is "reasonably related to legitimate penological interests," the Court examines four critical factors outlined by the Supreme Court in *Turner v. Safley*:[25] (1) the valid and rational connection between the regulation and the asserted legitimate governmental interest; (2) alternative means of exercising the constitutional right; (3) any effect accommodating the right would have on guards and inmates; and (4) the absence or existence of ready alternatives.[26]   Although courts afford prison administrators great deference, the *Turner* test "is not toothless."[27]   As the Supreme Court noted in *Beard v. Banks*,[28] it "requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective"; they must also "show[ ] a reasonable relation" in light of the "importance of the rights [here] at issue."[29]   Thus, a prison regulation "cannot be sustained when the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary and

---

[23] *Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004).

[24] *Turner*, 482 U.S. at 89.

[25] *Id.*; *see Thornburgh*, 490 U.S. at 415.

[26] *Turner*, 482 U.S. at 89.

[27] *Thornburgh*, 490 U.S. at 414.

[28] 548 U.S. 521 (2006).

[29] *Id.* at 533, 535.

irrational."[30]   With this analysis in mind, the Court addresses each of the contested mail policies.

### A. Postcard-Only Policy[31]

Defendants satisfy the first *Turner* factor by demonstrating a rational connection between the postcard-only policy and the Jail's legitimate penological concerns. Defendants contend that the postcard-only policy advances the safety and security of inmates and Jail employees while improving the efficiency of the mail review process. First, by limiting the space in which inmates and their correspondents may converse, this policy impedes the sender's and recipient's ability to conceal various illegal schemes in lengthy correspondence, including plans to escape, plans involving assaults on inmates, and plans to introduce illegal drugs, weapons, or other contraband into the facility.  Moreover, Defendants allege that this policy reduces the likelihood that inmates will receive LSD or other controlled substances that may be transmitted through multi-paged missives.  This rationale is consistent with Defendant Harris's prior testimony in *Daniels v. Harris*,[32]  where he noted that the Jail "has encountered several problems with inmates receiving contraband from outside the prison" in response to inmates' requests "buried inside of lengthy letters."[33]   Finally,

---

[30] *Turner*, 482 U.S. at 89-90.
[31] Only last year, this Court determined in *Daniels v. Harris*, No. 3:11-CV-45 (CAR), 2012 WL 3901646, at *6 (M.D. Ga. Aug. 8, 2012), that the Jail's postcard-only policy did not violate an inmate's First Amendment rights, and the Court finds no reason to deviate from that ruling in favor of PLN.
[32] *Daniels*, 2012 WL 3901646 at *6.
[33] *Id.* at *5.

Defendants allege that this policy conserves the Jail's limited resources.   In Defendants' own words, "it has been a longstanding practice in the Walton County Jail and elsewhere to review the contents of non-privileged inmate mail."[34]  This day-to-day process required an "enormous amount of time."[35]  However, since the new policy was implemented, the two Jail employees assigned to mailroom duties each save two to three hours per day processing inmate mail.

PLN challenges the reasonableness of these penological interests by demanding "statistics on the amount of mail sent and received" and additional evidence "that the reduced time sorting mail is not instead due to the fact that the burden of corresponding only via postcard has 'chilled' communications."[36]  However, prison officials "need not demonstrate an actual danger in order to support the reasonableness of their determinations.  It is enough to show that a potential danger exists."[37]  Defendants have met this burden, and, as such, the first *Turner* factor weighs in their favor.

As outlined above, the second *Turner* factor directs the Court to consider PLN's other options for exercising its First Amendment rights under the contested policy.[38] The Court agrees with PLN's assertion that traditional forms of in-jail communication

---

[34] Defs. Response at 6 [Doc. 21].
[35] *Id.*
[36] PLN Reply at 11-12 [Doc. 24].
[37] *Prison Legal News v. Cheshire*, No. 1:04CV173DAK, 2006 WL 1868307, at *6 (6th Cir. 2006) (quoting *Espinoza v. Wilson*, 814 F.2d 1093, 1097-98 (6th Cir. 1987)) (internal quotation marks omitted).
[38] *Turner*, 482 U.S. at 90.

such as phone calls and in-person visitation are not suitable alternatives for the educational information PLN provides to inmates.  Likewise, other forms of media, like radio and television, may not replace the written word.[39]  However, as discussed below, other, fundamentally similar alternatives for educational communication, such as periodicals and books, may suffice in light of the Court's Order and the Jail's new policies.   While these options may be less than ideal from PLN's perspective, "alternatives need not be ideal; they need only be available."[40]  Thus, although the second factor is inconclusive at this point of the proceedings, it tends to weigh in favor of Defendants.

In addressing the third *Turner* factor, the Court must assess the impact of PLN's request to send correspondence in envelopes to the Jail's inmate population.[41] Defendants contend that allowing this type of correspondence would increase the success of various plans to engage in illegal activity, which in turn would lead to conflicts and violence initiated by inmates and their confidantes.   Moreover, Defendants state that altering the postcard-only policy would significantly increase the amount of time Jail employees spend processing inmate mail, which would detract from employees' ability "to accomplish other responsibilities that ensure a safe and

---

[39] *See Jacklovich*, 392 F.3d at 431; *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986).
[40] *Overton v. Bazzetta*, 539 U.S. 126, 127 (2003).
[41] *Turner*, 482 U.S. at 90.

secure jail."[42]

Again, PLN first challenges Defendants' proffered rationale as "suspect"[43] because it is based on a vague assertion that the postcard-only policy saves the Jail an "enormous amount of time."[44]  The Court does not agree.  Defendants' general statement must be read in conjunction with Defendants' other statement that the postcard-only policy saves each mailroom employee two to three hours of their time per day, five days a week.  It logically follows, then, that if the postcard-only policy is repealed, and Plaintiff's rights are fully accommodated, the Jail would be required to expend an additional 1,000 man hours per year to review mail.

PLN also argues that Defendants' random mail inspections are inconsistent with the Jail's interest in uncovering criminal activity.  Again, the Court disagrees. Assuming the postcard-only format significantly inhibits inmates' attempts to conceal criminal activity, Defendants need not inspect every line of every postcard that passes through the mailroom.  Therefore, the third factor also weighs in favor of Defendant.[45]

Finally, the fourth *Turner* factor requires the Court to determine whether the regulation is an exaggerated response to the Jail's expressed concerns.[46]  Accordingly, the burden is on PLN to show obvious, easy alternatives that fully accommodate the

---

[42] *Daniels*, 2010 WL 3901646, at *2.
[43] PLN Reply at 12 [Doc. 24].
[44] Defs. Response at 6 [Doc. 21].
[45] *See, e.g., Hrdlicka v. Cogbill*, No. C 04-3020 MJJ, 2006 WL 2560790, at *10-12 (N.D. Cal. Sept. 1, 2006); *Thornley v. Edwards*, CIV. No. A86-1503, 1988 WL 188333, at *8 (M.D. Penn. March 29, 1988).
[46] *Mauro v. Arpaio*, 188 F.3d 1054, 1062 (9th Cir. 1999)..

publisher's right at *de minimis* cost to the Jail.[47]   PLN offers a single alternative to the postcard-only policy—to "continue to inspect all incoming mail for objectionable content as the Jail has consistently done."[48]   Fatal to PLN's argument is its failure to proffer any evidence that this alternative would only be a *de minimis* cost to the Jail.[49] In fact, it appears that this alternative will cause Defendants to incur significant costs, both in man hours and increased risk to the Jail's population and employees.  As such, PLN has failed to carry its burden under the fourth *Turner* factor.[50]

Accordingly, the *Turner* analysis weighs in favor of Defendants' postcard-only policy at this point in the proceedings, and PLN's request for injunctive relief from the postcard-only policy is **DENIED**.

## B.   Limited Periodicals Policy

Unlike the postcard-only policy, PLN's claim against the Jail's periodicals policy has a substantial likelihood of success on the merits.  Again, the Court must analyze Defendants' periodicals policy in accordance with *Turner* factors, beginning with Defendants' penological interest.  Defendants contend that its prohibition of individual periodical subscriptions reduces the risk of fire hazards, sanitation concerns, and the concealment of weapons by limiting the amount of paper in each

---

[47] *See Turner*, 482 U.S. at 90-91 ("This is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.").

[48] PLN Mtn. for Prelim. Inj. at 14 [Doc. 24].

[49] *Thornburgh*, 490 U.S, at 419.

[50] *See Turner*, 482 U.S. at 90-91; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987) (noting that the burden is not on the prison official to disprove the availability of alternatives).

inmate's cell.  While these are all legitimate penological objectives, the Court cannot conclude that they are rationally advanced by Defendants' current policy.

Several courts have recognized the tenuous connection between prohibitions on individual subscriptions and fire or sanitation concerns.[51]  Courts generally take issue with this rationale because inmates are permitted to have any number of other materials in their cells that pose at least an equal threat to the security and safety of the jail.[52]  For example, in this case, Defendants' policies permit inmates to keep legal papers, five or fewer personal items, one religious text, one library book, and other flammable materials in their cells.  Based on these conditions, the Court concludes that "inmates who wish to set fires can and will do so, whether or not they have subscription publications for fuel."[53]  This same rationale applies to inmates' ability to conceal weapons with their cells' contents.[54]

Likewise, the Court is not persuaded that altering the policy will flood inmates' cells with an "unlimited" number of magazines, journals, and periodicals.[55]  In fact, other, legitimate Jail policies address this concern.  First, Jail officials are directed to seize inmates' possessions or other contents from their cells if the accumulation is

---

[51] *See, e.g., Mann*, 796 F.2d at 82 (sanitation); *Spellman v. Hopper*, 95 F. Supp. 2d 1267, 1273-76 (M.D. Ala. 1999) (sanitation and fire); *Kincaid v. Rusk*, 670 F.2d 737, 743 (7th Cir. 1982) (fire).
[52] *See, e.g., Spellman*, 95 F. Supp. 2d at 1273.
[53] *Id*.
[54] *Id*. at 1278-79.
[55] Def. Resp. to Prelim. Inj. at 15 [Doc. 21].

"considered excessive and constitute[s] a safety, security or health hazard."[56]  Second, inmates are required to participate in a "daily" cleaning regimen "within [their] housing and common areas" or risk being subject to disciplinary action.[57]  Considering these preexisting safeguards, the Court cannot credit Defendants' "slippery slope" fallacy.  While the Court is mindful that "responsible prison officials must be permitted to take reasonable steps to forestall" a threat to institutional security,[58] "undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression."[59]  Where, as here, the plaintiff has demonstrated the lack of a rational connection between the maintenance of institutional security and a virtual prohibition on publications, deference to prison policy is not warranted.

Although the first *Turner* factor weighs heavily in PLN's favor, the second *Turner* factor is inconclusive.  Currently, the policy wholly prohibits PLN from providing its periodicals to individual inmates; instead, Defendants assert that an informal "survey is underway to obtain inmate preferences about what type of magazines, newspapers, or periodicals inmates would like to have available" through the Jail's "library"—what appears from the parties' briefs to be a circulating cart.[60] Defendants fail to provide any details of how or when this "survey" will be conducted

---

[56] Jail Inmate Handbook at 5-6 [Doc. 24-3].

[57] *Id*. at 6.

[58] *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132-33 (1977).

[59] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969).

[60] Defs. Response at 8 [Doc. 21].

or even their means of concluding what, exactly, inmates "would like to read."[61] Based on Defendant Harris's affidavit, it appears that this proposition is nothing more than that—a proposition for future action.  Ultimately, Defendants do not accept any of PLN's periodicals under the present policy, and the Court is not convinced that PLN will ever be able to communicate with inmates through its periodicals.[62]

Although *Prison Legal News* is essentially barred from the Jail, PLN's First Amendment interest "must be viewed sensibly and expansively."[63]  As such, the Court must consider all reasonable alternatives to PLN's preferred form of communication. To that end, one of the newly-enacted mail policies permits inmates to order softbound books directly from the bookstore or publisher.  On its face, this policy allows PLN, as a publisher, to send a broad range of publications to the Jail, including books that address the same or similar topics in *Prison Legal News*.  In application, however, Defendants challenge PLN's status as a publisher.  Given Defendants' position and the meager facts available about the new book policy at this stage of the proceedings, the Court cannot determine if this policy provides PLN with a

---

[61] *See* Harris Aff. ¶ 15 [Doc. 21-1 at 7].

[62] The Court distinguishes the instant case from *Prison Legal News v. Cheshire*, No. 1:04CH173DAK, 2006 WL 1868307 (D. Utah June 3, 2006).  There, the district court found that PLN had alternative means for exercising its First Amendment interests.  Namely, inmates had <u>actual</u>, convenient access to *Prison Legal News* through the library at no cost.  While inmate access was limited by the number of copies available through the library, the *Cheshire* court found this alternative to be constitutionally adequate, though not ideal.  Importantly, the court contrasted the situation before it with other binding precedent, noting that "the Tenth Circuit has found a <u>complete</u> ban on PLN to be unconstitutional as applied."  *Cheshire*, 2006 WL 1868307, at *7 (emphasis added).

[63] *Thornburgh*, 490 U.S. at 417.

constitutionally adequate alternative.   As such, the second factor *Turner* is inconclusive.

Closely mirroring the first factor, the third and fourth *Turner* factors weigh in favor of PLN.  As discussed above, lifting the de facto publication ban should have little or no impact on Defendants' specific concerns, since the Jail already has other, constitutionally valid policies that effectively address fire hazards, sanitation, and weapons concealment.  Moreover, by enforcing these preexisting written policies, the Jail can accommodate PLN's constitutional rights at a *de minimis* cost.  Thus, PLN has demonstrated that Defendants' policy represents an "exaggerated response" to prison concerns.[64]

Based on the foregoing, the Court concludes that PLN has demonstrated a substantial likelihood of success on this particular First Amendment claim.  The fact that the second *Turner* factor is inconclusive is not sufficient to negate the merits of PLN's claim.  Defendants' failure to demonstrate a rational connection between its de facto periodicals ban and its asserted penological interests "renders the regulation unconstitutional without regard to the remaining three factors."[65]

PLN also satisfies the other three requirements for injunctive relief.  First, PLN will suffer irreparable harm unless the Court orders Defendants to lift its de facto ban on *Prison Legal News*.  The Supreme Court has held that "the loss of First Amendment

---

[64] *See Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991) (citing *Turner*, 482 U.S. at 89-91).
[65] *See Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009).

freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[66]  Second, the balance of hardships weighs in PLN's favor.  By virtually banning *Prison Legal News*, the Jail has infringed upon PLN's constitutionally guaranteed freedom of speech.  In contrast, lifting this ban will have little to no effect on the Jail and Defendants' expressed penological interests because of the other policies addressed above.  Third, and finally, this injunction will not be averse to the public interest.  As one district court aptly stated, "[n]o long string of citations is necessary to find that the public interest weighs in favor of having access to a free flow of constitutionally protected speech."[67]  Defendants do not contest any of these assertions.

Therefore, the Court **GRANTS IN PART** PLN's Motion for Preliminary Injunction in relation to its periodical, *Prison Legal News*.  Defendants are hereby **ENJOINED**, until directed otherwise by the Court, from refusing to provide, in toto, *Prison Legal News* to the inmates at Walton County Jail.  The Court does not enjoin Defendants from reviewing and censoring *Prison Legal News* if these mailings otherwise threaten the safety, security, or efficiency of the Jail and its population.

## C. <u>Revised Book Policy</u>

PLN has failed to establish that Defendants' revised policy restricting inmates'

---

[66] *See Elrod v. Burns*, 427 U.S. 347, 373 (1976).
[67] *ACLU v. Miller*, 977 F. Supp. 1228, 1235 (N.D. Ga. 1997) (quoting *ACLU v. Reno*, 929 F. Supp. 824, 851 (E.D. Pa. 1996)).

receipt of books violates PLN's constitutional rights, and, therefore, it is not entitled to injunctive relief on this claim.  Although PLN fully addresses Defendants' <u>previous</u> book policy under the *Turner* test, it fails to provide any meaningful analysis of Defendants' <u>current</u> policy, which was altered after PLN filed the instant Motion for Preliminary Injunction.  The Court suspects that PLN's omission is a simple oversight rather than any indication of PLN's intention to abandon this claim.  However, the Court cannot, and will not, act as PLN's advocate.  As the Court explained at length above, PLN bears the burden of proving the likelihood of its success on the merits of each claim, and it has failed to do so in the context of Defendants' current book policy.[68]

### D. <u>Privileged Mail Policy</u>

PLN fails to demonstrate a substantial likelihood of success on the merits as to its privileged mail policy claim.[69]   Claims under 42 U.S.C. § 1983, as in this case, must be predicated on a state official's deliberate deprivation of the plaintiff's constitutional rights.[70]   Mere negligence does not suffice.[71]   Currently, the record does not contain sufficient inferable facts or allegations to support a finding that Defendants intended to censor PLN's "legal" mail or that they were otherwise deliberately indifferent to

---

[68] *See Miami-Dade Cnty.*, 557 F.3d at 1198.

[69] The Court declines to address PLN's standing to bring its due process claim and challenge to the Jail's privileged mail policy since both these claims fail on the merits.  *See United States v. Hardy*, 855 F.2d 753, 758 n.3 (11th Cir. 1988) (declining to reach standing argument in favor of a discussion of the merits of appellants' case).

[70] *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990).

[71] *Daniels*, 474 U.S. at 336; *Hernandez v. Fla. Dept. of Corrs.*, 281 F. App'x 862, 866  (11th Cir. 2008).

PLN's constitutional rights.[72]

Defendants contend that letters from PLN's attorney, Lace T. Weber, would have been considered legal mail and forwarded to inmates under the Jail's generous privileged mail policy.  Through some apparent mishap, however, numerous letters were censored and returned to PLN undelivered over a span of five months.  At this point, Defendants cannot explain this discrepancy, as neither mailroom staff member recalls seeing any envelopes addressed from "Lace T. Weber, Attorney at Law."[73]  Although the sheer number of censored letters may demonstrate gross negligence, the Court cannot conclude that Defendants' actions amounted to <u>intentional</u> misconduct.  PLN apparently reaches the same conclusion since it does not challenge Defendants' statement that they "<u>mistakenly</u> censored Lance Weber's legal communications."  The Court cannot grant injunctive relief based on such allegations.

## II.   *Fourteenth Amendment Due Process Claim*

Finally, PLN alleges that Defendants' notice and appeal policies for mail censorship deny PLN adequate procedural due process under the Fourteenth Amendment.  Given that PLN has a constitutional liberty interest in uncensored communication, certain "minimum procedural safeguards" are required when prison

---

[72] *See Jones v. Salt Lake Cnty.*, 503 F.3d 1147, 1160-63 (10th 2007).
[73] Crawford Aff. ¶ 7 [Doc. 21-5 at 4]; Grabowski Aff. ¶ 7 [Doc. 21-6 at 4].

officials withhold inmates' mail.[74]   Unfortunately, it is unclear exactly what "minimum" process is required.[75]   PLN asserts that the Court should adopt the Supreme Court's "high standard"[76] for personal correspondence outlined in *Procunier v. Martinez*[77] and its progeny, which would require Defendants to provide (1) notice of the rejection of a mailing directed to the sender; (2) a reasonable opportunity for the mailing's author to address the censorship decision; and (3) referral of the complaint to a prison official other than the person who originally censored the mailing.[78]   In opposition, Defendants suggest that the Court should apply the less restrictive analysis adopted by the Eleventh Circuit in *Perry v. Secretary, Florida Department of Corrections*,[79] which addressed "mass mailings" of pen pal advertisements.[80]   For purposes of the instant preliminary injunction, the Court assumes, without deciding, that PLN's favored *Martinez* analysis applies to the instant circumstances.

   At this point in the proceedings, the Court cannot conclude that PLN is denied sufficient due process by Defendants' censorship procedures.   Although the Jail's written notice and review policy is limited to correspondence on postcards, PLN's

---

[74] *See Procunier v. Martinez*, 416 U.S. 396, 417 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

[75] *See Perry v. Secretary, Fla. Dept. of Corrs.*, 664 F.3d 1359,1367-68 (11th Cir. 2011).

[76] *Id.* at 1368.

[77] *See id.* (expressly acknowledging that *Martinez* "may still control for due process claims where a prison limits personal correspondence").

[78] *Martinez*, 416 U.S. at 418-19.   In the wake of *Thornburgh v. Abbott*, every circuit that has addressed this issue has held that due process requires prison officials to provide equivalent notice to the author.   *See Jaclovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004); *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001); *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996).

[79] 664 F.3d 1359, 1367-68 (11th Cir. 2011).

[80] *Id.*

own experience tends to suggest that this procedure, or a constitutional equivalent, applies to all mailings.[81]   The Jail's current "Censorship Guidelines" direct the detention commander, Defendant Harris, or his "designee" to "send notice to the inmate and author of the post card, whether it was an inmate or outside correspondent, that incoming or outgoing mail was censored."[82]   Thereafter, "the author is to be provided seven calendar days to protest the censorship … A due process hearing must be held before a person other than the person who made the original censorship decision."[83]   Finally, Defendant Harris or his designee must "respond to the appellant's protest within ten calendar days."[84]   Thus, the express language of the policy tracks the specific procedural safeguards of *Martinez* and its progeny by offering (1) notice of rejection; (2) with a reasonable opportunity to challenge the censorship decision; with (3) an appeal to a disinterested party not privy to the initial decision.[85]

Although the policy as written is limited to correspondence on postcards, it is undisputed that PLN was provided written notice of the denial of the mailings at issue.   Each objectionable item was returned with a stamp on the front declaring

---

[81] *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."); *see also Smith v. Georgia*, 684 F.2d 729, 733 n.6 (11th Cir. 1982). ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement.").
[82] Jail P&P 5.16(II)N.6 [Doc. 21-2 at 3].
[83] *Id*. at N.8.
[84] *Id*. at N.9.
[85] *See Martinez*, 416 U.S. at 418-19.

"REFUSED" / "UNAUTHORIZED MAIL" / "RETURN TO SENDER" with the date and "WALTON COUNTY JAIL."[86]   PLN does not offer any legal support for its contention that additional information is required to put the sender on notice of a possible constitutional deprivation.   Moreover, there is no evidence that PLN attempted to avail itself of any due process after receiving these rejections, and PLN does not contend that Defendants refused to address its censorship decisions.  In fact, the record demonstrates that the only time PLN attempted to contact Defendants was to generally "inquire if [the] facility allows prisoners to receive books and magazines from the publisher/distributor."[87]   Defendant Harris attempted to answer PLN's inquiry just seven days after Defendant Chapman received the original email. Without additional information, the Court cannot conclude that the Jail's notice and review policy does not, in practice, apply to all mailings or fails to provide sufficient procedural due process under *Martinez*.[88]

## CONCLUSION

Based on the foregoing, PLN's Motion for Preliminary Injunction [Doc. 7] is **GRANTED IN PART** and **DENIED IN PART**.  Until otherwise directed by the Court, Defendants are hereby **ENJOINED** from wholly refusing to provide PLN's *Prison*

---

[86] PLN Complaint at 8 [Doc. 1].

[87] PLN Email to Def. [Doc. 21-4].

[88] *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 485 (1982) (finding a the party's failure to avail himself of procedure did not constitute a sign of their inadequacy); *Maples v. Martin*, 858 F.2d 1546, 1551 (11th Cir. 1988) (rejecting a procedural due process claim where plaintiffs failed to avail themselves of available procedure or show that resort to it would have been futile); *see also Cheshire*, 2006 WL 1868307, at *10.

*Legal News* periodical to inmates at Walton County Jail.  The Court does not enjoin Defendants from reviewing and censoring said periodical if it otherwise undermines Defendants' legitimate penological objectives.  All other requests for injunctive relief are **DENIED**.  Defendants must comply with the Court's Order within **30 DAYS** of the date below.

SO **ORDERED,** this 26th day of March, 2013.

S/  C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

BBP/ssh