UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, | ) | |
|     Plaintiff, | ) | Case No.: 3:12-CV-125-CAR |
| | ) | |
|     v. | ) | |
| | ) | |
| JOE CHAPMAN, et al., | ) | |
|     Defendants. | ) | |

**BRIEF IN SUPPORT OF PLN'S PETITION FOR
ATTORNEYS' FEES AND EXPENSES**

STATEMENT OF FACTS

This is an action brought by Prison Legal News ("PLN") challenging various aspects of the mail policy that was in place at the Walton County Jail after the jail systematically rejected correspondence and publications sent by PLN to a number of the inmates who resided at the jail. The Walton County Jail is administered by the county's sheriff, Joe Chapman, and by Wade Harris, who is the sheriff's jail commander and is in charge of day-to-day operations at the jail.

PLN filed its complaint against Sheriff Chapman and Deputy Harris on September 21, 2012 in which it alleged that the defendants violated PLN's constitutional rights in the way the jail censored the mail PLN sent to the jail's inmates. The complaint focused on four discrete aspects of the jail's mail policy. Three of those dealt with the restrictions imposed by the jail on the kinds of mail an inmate is allowed to receive from the outside world, including publications (i.e., books, magazines, newspapers, etc.), personal correspondence (i.e., letters), and privileged communications from attorneys – restrictions which allegedly led the jail to reject PLN's mail. The fourth area concerned the manner in which the jail handled all incoming mail sent to inmates that it deemed unauthorized under its mail policy and therefore rejected.

1

On the same day PLN filed its complaint against the defendants, it moved for a preliminary injunction asking this Court to enjoin what PLN alleged were the objectionable aspects of the jail's mail policy.  The briefing provided by PLN in support of its motion for a preliminary injunction was extensive, well-researched and supported by detailed factual information collected by PLN and its attorneys during their investigation into the circumstances surrounding the jail's systematic censorship of PLN's mail.

 After PLN initiated its lawsuit against the defendants and sought an injunction against them the defendants changed the mail policy at the jail.  The changes made by the defendants, like their use of a survey to determine what periodicals inmates should be allowed to read at the jail, did little or nothing to rehabilitate the jail's unlawful mail policy. This Court agreed as well in its order on PLN's motion for injunctive relief.  In that order, the Court rejected the defendants' attempt to use the changes to moot PLN's request for injunctive relief.  As the Court put it, "several areas of dispute remain[ed] unresolved" even in light of the policy revisions. (D.E. 43 at 7.)

This was the tone adopted by the Court throughout most of its order even as it granted PLN's motion to enjoin the jail from enforcing its wholesale ban on publications.  (*See, e.g.*, D.E. 43 at 12 ("[A]lthough the second factor is inconclusive at this point of the proceedings, it tends to weigh in favor of Defendants"), 14 (concluding that "the *Turner* analysis weight in favor of Defendants' postcard-only policy *at this point in the proceedings*"), 16 ("Although the first *Turner* factor weighs heavily in PLN's favor, the second *Turner* factor is inconclusive"), 17-18 ("Given Defendants' position and the *meager facts* available about the new book policy *at this stage of the proceedings*, the Court cannot determine if this policy provides PLN with a constitutionally adequate alternative"), 20-21 (declining to find an intentional violation of PLN's

constitutional rights by defendants because "the record does not contain sufficient facts or allegations" to support such a finding), 24 ("***Without additional information***, the Court cannot conclude that the Jail's notice and review policy does not, in practice, apply to all mailings or fails to provide sufficient procedural due process under *Martinez*")) (emphases added).  In short, the Court signaled to PLN that it needed more information before it could make a definitive ruling on most of PLN's claims.

PLN and its attorneys took this message to heart.  PLN engaged in extensive discovery to address the Court's concerns and to refute the arguments made by the defendants to justify their mail policy that the Court found persuasive like their claim that jail officials "saved" time by sorting postcards rather than letters in envelopes.  Counsel for PLN deposed the Sheriff, his jail commander, a deputy who worked in the jail's mail room, and an expert witness hired by the defendants.  PLN hired its own expert witness to opine on the justifications given by the defendants to defend their mail policy.  And, PLN's attorneys engaged in significant paper discovery issuing no less the four sets of requests for production of documents to the defendants, along with carefully crafted interrogatories and requests for admission.[1]  The documents generated as part of the litigation in this case totaled more than 4,000 pages.  (Wan Decl. ¶¶ 29-30, Exh. C attached thereto.)[2]

Counsel for PLN also sought through discovery the "mail log data" kept by the jail which documented the volume of inmate mail processed by the jail in an effort to test the reasonableness of the defendants' time-savings assertion and the extent of due process violations committed by the defendants and the deputies under their command.  The Court itself agreed

---

[1] PLN is making these discovery requests available to the Court as attachments to this brief so that the Court can judge for itself the quality of the work performed by PLN's attorneys.
[2] References to declarations filed in support of this petition, including those of PLN's expert witnesses, take the form of "[counsel's last name] Decl.".

during a discovery hearing in Athens that such an inquiry was warranted and directed defense counsel to work with PLN's attorneys to come to an agreement on the production of the mail log data.  (*See* D.E. 53 [Minute Entry for 9/24/13 hearing].)  Once the defendants turned over the mail log data, counsel for PLN – in particular, Jeff Filipovits – spent considerable time sorting through and analyzing this information so that PLN could provide a summary of it to the Court at the appropriate time, which PLN ultimately did following the February 2014 bench trial.  (D.E. 95 [Decl. of Jeff Filipovits filed 2/26/14].)

Counsel for PLN have worked hard to educate the Court on the legal and practical issues presented in this case, sometimes at the urging of this Court.  In September 2013, PLN's attorneys submitted pre- and post-hearing briefs that addressed a number of topics in which the Court, as expressed through a written order and at the hearing itself, took a particular interest. (*See* D.E. 47 [Order of the Court suspending discovery]; D.E. 51 [PLN's Pre-Hearing Brief]; D.E. 61 [PLN's Post-Hearing Brief].)  Following the bench trial in this case, PLN's attorneys briefed the difficult issue of qualified immunity, also at the request of the Court.  (D.E. 99 [PLN's Post-Trial Brief].)

The Court convened a one-day bench trial on February 24, 2014 to consider the issue of liability on three of PLN's claims.  Brian Spears and Lance Weber were the ones responsible for presenting PLN's case to this Court at trial.  Gerry Weber and Jeff Filipovits played a supporting role at trial, handling issues related to PLN's voluminous exhibits.  (D.E. 92 [Minute Entry for 2/24/14 Proceeding].)  The Court received testimony from a total of five witnesses at the trial, three of whom were called by PLN for its case-in-chief.  Albert Wan took responsibility for preparing PLN's post-trial brief.  On August 26, 2014, the Court issued its order addressing the issues raised at trial.  (D.E. 102.)

4

When all was said and done, PLN's attorneys achieved a number of successes in its litigation against the Walton County Sheriff's Office.

• The Sheriff modified the mail policy at the jail after PLN brought suit against him, the intent of which was to give inmates greater access to mail from the outside world.  (*See* D.E. 21 at 35, ¶¶ 14-16 [Defs.' Response to PLN's Motion for Injunctive Relief; Decl. of Wade Harris].)

• Counsel for PLN sought and received a preliminary injunction against the jail's ban on publications which allowed PLN to send its periodicals directly to inmates at the jail which it could not do before the lawsuit was brought.  (D.E. 42.)

• Counsel for PLN obtained a declaratory judgment from this Court finding that the jail's ban on publications and its overly restrictive notification and appeals regime for censored mail violated the Constitution.  (D.E. 102-103.)

• Lastly, PLN's attorneys negotiated a settlement with the defendants on its due process damages claim for $10,000.00. (D.E. 105.)

<u>LEGAL ARGUMENT AND CITATIONS TO AUTHORITY</u>

I.     **PLN is a Prevailing Party and is Therefore Entitled to An Award of Attorneys' Fees and Costs Under 42 U.S.C. § 1988.**

42 U.S.C. § 1988 authorizes an award of "reasonable" attorneys' fees and costs to a "prevailing party" in a Section 1983 action.  42 U.S.C. § 1988.  "The purpose of [Section 1988] is to ensure effective access to the judicial process" for persons and entities seeking vindication of their civil and constitutional rights.  *Hensley* v. *Eckerhart,* 461 U.S. 424, 429 (1983) (citation omitted).  In enacting Section 1988, Congress wanted to ensure that victims of civil rights violations would not be at the mercy of the private market where fees charged by private attorneys are generally beyond the reach of most civil rights litigants.  *See City of Riverside v.*

*Rivera*, 477 U.S. 561, 576 (1986).  It also considered a fee-shifting provision like Section 1988 an effective deterrent to future civil rights violations where a plaintiff's access to a "damages remedy" are often "severely limit[ed]" or even "preclude[d]" because of the "immunity doctrines and special defenses" that are available to public officials.  *Id.* at 577.  In sum, a prevailing plaintiff in a Section 1983 action "should ***ordinarily*** recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley*, 461 U.S. at 429 (citations and quotation marks omitted) (emphasis added).  Such an award should also include fees for work done by law clerks, paralegals, and the like, to the extent they have "perform[ed] work traditionally done by an attorney."  *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (citation and quotation marks omitted).

There is no question that PLN is a prevailing party in this case so that it is entitled to an award of fees.  The Supreme Court has defined a prevailing party as someone who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley*, 461 U.S. at 433 (citation omitted).  An award of prevailing party fees "does not turn on the magnitude of the relief obtained" or "on the *degree* of the plaintiff's success".  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  So long as the plaintiff, in bringing his lawsuit, "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff", he is considered a prevailing party within the meaning of Section 1988.  *Id.* at 111-12.  The Supreme Court has "repeatedly held that an injunction or declaratory judgment … will usually satisfy that test."  *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curium) (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curium)).

Before PLN brought its lawsuit against the defendants, it had no means with which to correspond with inmates at the jail through the mail.  Jail officials refused to deliver any mail

PLN sent to the inmates at Walton County, including its monthly flagship newsletter, *Prison Legal Newsletter*.  This litigation changed all that, however.  Because of PLN's lawsuit, the defendants are now required to give PLN some measure of access to inmates by mail, where before it had none at all.  PLN first achieved this relief through its motion for a preliminary injunction.  The court granted this motion in part and enjoined the defendants from refusing to deliver PLN's monthly newsletter to inmates in their custody.  This ruling was based on the Court's determination that the defendants' blanket ban on incoming publications in all likelihood violated PLN's First Amendment right to freedom of speech.  The Court maintained this position following the bench trial and in the face of a more developed factual record.  In its bench trial order, this Court issued a declaratory judgment against the defendants finding that their total ban of incoming publications to inmates violated the First Amendment.  In doing so, the Court relied heavily on the same rationales that prompted it to preliminarily enjoin the defendants on their publications ban, thus cementing the victory PLN achieved at the outset of the litigation.

Counsel's successes did not stop there, however.  One of the claims brought by PLN against the defendants was its challenge to the legality of the appeal and notice procedures employed by the jail when it censored PLN's non-postcard mail.  This Court initially declined to find in favor of PLN on this claim at the preliminary injunction stage, in part, because it didn't have enough information to make such a ruling, but also because it disagreed with PLN's argument that the defendants only gave senders of censored postcard mail, as opposed to senders of all kinds of censored mail, appropriate due process protections.  (*See* D.E. 42 at 23-24.) Following the bench trial, this Court reversed course, and ruled in favor of PLN on its due process claim, this time finding on the more robust record before it that "the Jail does not provide consistent notice and appeal procedures when it rejects non-postcard mail."  (D.E. 102 at 22.)  In

addition to that ruling, the Court denied the defendants qualified immunity on PLN's due process claim, clearing the way for PLN to seek damages against the defendants for their unlawful conduct.  (*Id.* at 28-29.)  Counsel for PLN negotiated a settlement with the defendants on the due process claim, in part, to avoid burdening the Court with yet another trial and also to minimize the amount of attorney time counsel would be required to expend in a case that has lasted for more than two years.

This is all to say that PLN is a prevailing party in this case and is therefore entitled to an award of attorneys' fees and costs.

## II.    The Rates and Hours Claimed in This Fee Petition are Reasonable and Should Result in a Full Fee Award.

"The starting point for determining the amount of a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.' " *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley*, 461 U.S. at 433). "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve."  *Id.* (citation omitted).

### A.    The Number of Hours Claimed in this Fee Petition Are Reasonable and Are the Product of a Good Faith Exercise in Billing Judgment.

The hours expended by attorneys for a particular matter are "reasonable" if they are consistent with the hours that would normally "be billed to a client of means who was seriously intent on vindicating similar rights." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988).  This includes time spent by counsel in litigating the question of fees before this Court.  *Johnson v. Mississippi*, 605 F.2d 635, 637-39 (5th Cir. 1979).

Where a prevailing party has brought a case like this one that involves "a common core of facts" and "related legal theories", the reasonableness inquiry should turn on the significance

of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  This is because "counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim-by-claim basis." *Id.*  "Such a lawsuit", the Supreme Court observed in *Henlsey*, "cannot be viewed as a series of discrete claims." *Id.*  "In determining whether claims are related by a common core of fact, the Eleventh Circuit has taken an ***expansive view***." *Lambert v. Fulton County, Ga.*, 151 F. Supp. 2d 1364, 1371 (N.D. Ga. 2000) (citing *Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987)) (emphasis added).

Of course, counsel are required to exercise appropriate "billing judgment" so that they do not bill for hours that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Put another way, counsel should make a "good-faith effort" to eliminate those hours from his fee submission that he would not, consistent with sound business practices and ethical considerations, otherwise charge to his client, even if it is his adversary who will ultimately be footing the bill. *Id.* (citing *Copeland v. Marshall*, 642 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

To assist the Court in determining the reasonableness of hours expended, "counsel should … maintain[] records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the … court can assess the time claimed for each activity." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citation omitted).  "[A] well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case," *Norma v. Housing Auth. of Montgomery, Ala.*, 836 F.2d 1292, 1303 (11th Cir. 1988).  Where there is "sworn testimony that, in fact, it took [counsel] the time claimed [to perform a certain task]"

such evidence is entitled to "***considerable weight*** on the issue of the time required …." *Perkins*

*v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) (emphasis added).

Counsel for PLN have tried to comply with these core principles in determining the hours

reasonably expended in this matter.  Each attorney has submitted sworn, detailed,

contemporaneous billing statements to this Court in support of PLN's fee petition.  The billing

statements reflect that counsel reduced and in some cases completely discounted hours they

would not have otherwise billed to a fee-paying client.[3]  These exercises in billing judgment took

into account the fact that PLN did not achieve the full measure of relief it sought in this litigation

and that PLN had multiple attorneys on the case, one or more of whom might sometimes have

performed duplicative work.  (Spears Decl. ¶ 4; G. Weber Decl. ¶¶ 4-7; Filipovits Decl. ¶ 17;

Wan Decl. ¶¶ 23-24; L. Weber Decl. ¶ 11.)

It would be improper for this Court to further reduce the hours claimed by PLN in this fee

petition in light of the reductions already made by PLN's attorneys.  This is so for at least two

reasons.

One reason is that this litigation involved interrelated factual and legal issues.  As the

Eleventh Circuit has observed:

> In fixing the fee, the district court should be mindful that in complex civil rights
> litigation … issues are overlapping and intertwined.  [T]he court must consider
> the relationship of the claims that resulted in judgment with the claims that were
> rejected and the contribution, if any, made to the success by the investigation and
> prosecution of the entire case.

---

[3] These reductions do not reflect the many tasks performed by counsel during this litigation but
for which there is no corresponding billing entry in the time sheets accompanying this petition.
Counsel in a further exercise of their billing judgment opted not to bill for these tasks because of
they involved routine, non-substantive matters.  (*See* G. Weber Decl. ¶ 5; Filipovits Decl. ¶ 17a;
Wan Decl. ¶ 23; L. Weber Decl. ¶ 11.)

*Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1187 (11th Cir. 1983) (quoting *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (en banc)).

As this Court is well aware having sifted through the legal arguments and voluminous factual record in this case, PLN's claims involved inter-related legal and factual issues.  This litigation dealt with a unified subject matter – the constitutionality of the inmate mail policy at the Walton County jail – and the defendants sought to justify the legality of their policy with a unified theme – namely, that the challenged policies bore some relation to their efforts in operating the jail.  Even though PLN did not technically prevail on every claim its prosecution of one claim without question aided PLN in its ability to prevail on another claim.  For example, the discovery PLN conducted on the jail's rejection of PLN's non-postcard mail in relation to PLN's postcard-only claim helped PLN prove up its procedural due process claim where both claims involved the propriety of how the jail treated non-postcard mail.[4]  In short, it would be improper for this Court to "dissect[]" PLN's fee petition "into 'winning' and 'losing' hours with the latter being non-reimbursable …."  *Dowdell*, 698 F.2d at 1187.  Such an approach would, in the words of the Court of Appeals, "contradict[] the law of this circuit."  *Id.*

Nor is a further reduction warranted simply because PLN employed multiple counsel.  The Eleventh Circuit has observed that "a reduction [for duplication of effort] is warranted only if the attorneys are ***unreasonably*** doing the ***same*** work."  *Johnson*, 706 F.2d at 1208.  But counsel's contemporaneous documentation of the work they did in this case reflects that PLN's attorneys maintained a strict division of labor throughout the litigation and that this divide-and-conquer approach allowed counsel to avoid almost all duplication of effort, let alone duplication

---

[4] This Court may recall that PLN's due process claim alleged that the jail only provided due process protections to senders of postcards rather than to senders of all mail, including non-postcards, a claim which PLN proved to the satisfaction of this Court.  (D.E. 102 at 22.)

that would be deemed unreasonable.  (Spears Decl. ¶ 4; G. Weber Decl. ¶ 5; Filipovits Decl. ¶ 12; Wan Decl. ¶ 24; L. Weber Decl. ¶ 7.)

This is what a team-approach to litigation is all about, and it is an approach that has received the approval of the Eleventh Circuit in complex civil rights cases like this one:

> The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not ground for reducing the hours claimed.  The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work.

*Johnson*, 706 F.2d at 1208.

In sum, "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple lawyer litigation."  *Id*. (citing *Ward v. Kelly*, 515 F.2d 908, 912 n.11 (5th Cir. 1975)) (additional citation omitted).  There is little doubt that PLN has satisfied this standard here so that it should be fully compensated for the hours claimed in this petition.  (*See* Bramlett Decl. ¶ 12 (opining that "the billing judgment exercised by Plaintiffs' counsel … more than adjusted for concerns over staffing and duplication").)

The following is a summary of the hours actually expended by PLN's counsel in this litigation and the hours as reduced by counsel following their exercise in billing judgment:

Table 1 of 4

| Stage | Brian Spears (actual) | Brian Spears (reduced) | Gerald Weber (actual) | Gerald Weber (reduced) | Jeff Filipovits (actual) | Jeff Filipovits (reduced) |
|---|---|---|---|---|---|---|
| Pleadings & Prelim. Inj.[5] | 18.17 | 9.13 | 55.2 | 34.1 | 60.35 | 59.60 |
| Discovery[6] | 65.12 | 47.97 | 68.6 | 48.9 | 68.7 | 43.39 |

---

[5] This category includes time spent by counsel conducting the factual investigation before bringing suit against the defendants.

[6] This category includes work done by counsel briefing and researching motions and responsive pleadings filed with the Court during discovery.

| | | | | | | |
|---|---|---|---|---|---|---|
| Trial Prep. | 18.09 | 10.71 | 44.9 | 26.2 | 6.2 | 0 |
| Trial | 12.34 | 9.84 | 23.8 | 19.5 | 16.8 | 0.33 |
| Post-Trial[7] | 4.82 | 4.30 | 25.7 | 14.7 | 2.7 | 0.25 |
| **Total:** | **118.54** | **81.95** | **218.20** | **143.4** | **148.55** | **103.57** |

Table 2 of 4

| Stage | Albert Wan (actual) | Albert Wan (reduced) | Lance Weber (actual) | Lance Weber (reduced) | Alissa Hull (HRDC) (actual) | Alissa Hull (HRDC) (reduced) |
|---|---|---|---|---|---|---|
| Pleadings & Prelim. Inj. | 85.53 | 58.20 | 30.8 | 14.80 | 32.4 | 14.3 |
| Discovery | 132.36 | 79.51 | 102.60 | 75.20 | 48.80 | 35.60 |
| Trial Prep. | 9.34 | 0 | 54.9 | 43 | 0 | 0 |
| Trial | 0 | 0 | 6.5 | 6.5 | 0 | 0 |
| Post-Trial | 54.03 | 44.10 | 16.5 | 12.5 | 0 | 0 |
| Misc. | 0 | 0 | 0 | 0 | 32.2 | 13.6 |
| **Total:** | **281.26** | **181.81** | **233[8]** | **162.7** | **113.4** | **63.5** |

Table 3 of 4

| Stage | Robert Jack (HRDC) (actual) | Robert Jack (HRDC) (reduced) | Monique Roberts (HRDC) (actual) | Monique Roberts (HRDC) (reduced) |
|---|---|---|---|---|
| Pleadings & Prelim. Inj. | 0 | 0 | 0 | 0 |
| Discovery | 1.8 | .8 | 0 | 0 |
| Trial Prep. | 79.1 | 41.1 | 18 | 10.7 |
| Trial | 0 | 0 | 0 | 0 |
| Post-Trial | 14.5 | 12.8 | 0 | 0 |
| Misc. | 9.5 | 3.1 | 1.5 | 0.0 |
| **Total:** | **104.9** | **57.8** | **19.5** | **10.7** |

Table 4 of 4

---

[7] This category includes time spent briefing issues at the request of the Court post-trial and also time spent litigating the issue of fees before this Court.

[8] The totals for Lance Weber reflect the following travel time incurred by Mr. Weber which was billed at half the actual time expended: actual travel time = 21.7; reduced travel time = 10.7.

| Attorney[9] | Hours Billed | Reduced Hours | Percentage Reduction from Actual Hours |
|---|---|---|---|
| Brian Spears | 118.54 | 81.95 | 31% |
| Gerald Weber | 218.20 | 143.4 | 35% |
| Jeff Filipovits | 148.55 | 103.57 | 31% |
| Albert Wan | 281.26 | 181.81 | 35% |
| Lance Weber | 233 | 162.7 | 31% |
| Alissa Hull (HRDC) | 113.4 | 63.5 | 45% |
| Robert Jack (HRDC) | 104.9 | 57.8 | 45% |
| Monique Roberts (HRDC) | 19.5 | 10.7 | 46% |
| Teresa Knight (Paralegal to Brian Spears) | 17.75 | 17.75 | N/A |

The above figures reflect that counsel for PLN litigated this case vigorously but also in an efficient and judicious manner.  The co-lead counsel for PLN, Brian Spears and Gerald Weber, lent their decades-rich expertise in civil rights and First Amendment litigation to PLN's other attorneys so that few issues required the kind of intensive research efforts that are routinely performed by less experienced attorneys.  Jeff Filipovits and Albert Wan, the attorneys retained by PLN who billed at the lowest rates, handled the most time-consuming tasks like making and responding to discovery requests and drafting briefs.  The fee submission would have been much higher had Mr. Spears or Gerry Weber taken primary responsibility for these tasks.  *See* *LaPlante v. Pepe*, 307 F. Supp. 2d 219, 222 (D. Mass. 2004) (refusing to reduce fee award in

---

[9] Alissa Hull, Robert Jack and Monique Roberts were all employed as staff attorneys for the Human Rights Defense Center (HRDC), the parent entity for PLN, and worked at the direction of Lance Weber, HRDC's general counsel.  This Court granted Ms. Hull's motion to withdraw as counsel of record for PLN on September 19, 2013.  (D.E. 50.)  Because Mr. Jack and Ms. Roberts provided a supporting role in this litigation, neither attorney formally entered an appearance on behalf of PLN, although that does not affect PLN's entitlement to an award of fees for the time they spent on this case.  *See Case v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1252 (10th Cir. 1998) (finding as "[ir]relevant" to the fee question whether an attorney has entered an appearance; "our cases do not require an entry of appearance in order for the court to grant compensation").

prisoner case because plaintiff was represented by multiple counsel, including less experienced attorneys; "staffing the case with junior attorneys made sense; had Palmer and Dodge's senior members done the research and drafting, the cost would have been even higher to the losing parties, not to mention the firm").  The participation in this case of PLN's own attorney, Lance Weber, also resulted in a lower overall fee.  Lance Weber was intimately familiar with the facts and circumstances surrounding PLN's operations and the different mailings PLN sent to inmates at the Walton County jail.  This meant that PLN's attorneys spent less time than they otherwise would have spent communicating with their client in an effort to educate themselves about and keep abreast of the continuously unfolding fact pattern in this case; Lance Weber had all that information at hand and what he didn't know he could easily find out by accessing PLN's own files.

Despite all this, PLN is mindful that this Court has on more than one occasion expressed its concern that PLN had "too many attorneys", and there is little doubt defendants will make much of this issue in opposing PLN's fee application.  To further demonstrate its good faith to the Court then, and in hope of minimizing the amount of needless litigation that may stem from this fee petition, PLN has further cut its fee submission to this Court, applying an across-the-board reduction to each attorney's post-billing judgment hours; for most attorneys that reduction is 10%, and for Gerry Weber, it is 15%.

Based on the above, PLN respectfully requests that this Court compensate PLN's attorneys for the following hours:

| Attorney | Hours Claimed by PLN | Attorney | Hours Claimed by PLN |
|---|---|---|---|
| Brian Spears | 73.75 | Lance Weber | 146.4 |
| Gerald Weber | 143.4 | Alissa Hull | 57.1 |
| Jeff Filipovits | 93.21 | Robert Jack | 52.0 |

| Albert Wan | 163.62 | Monique Roberts | 9.6 |
|---|---|---|---|

These hours are without question reasonable and should not reduced by this Court any more than they already have.  Full compensation is appropriate here.

### B.      The Hourly Rates Sought by PLN in this Fee Petition Are Reasonable.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)) (additional citation omitted).  The general rule is that "[t]he 'relevant market' for purposes of determining the reasonably hourly rate for an attorney's services is 'the place where the case is filed.' " *Barnes*, 168 F.3d at 437 (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).  This is true for "an ordinary case requiring no specialized abilities not amply reflected among local lawyers." *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983) (Breyer, J.) But where a prevailing plaintiff provides the Court with evidence that there are no local lawyers who can or are willing to handle its case – either because they lack the necessary expertise or for some other reason – the Court may look to a different locale as the "relevant market." *See, e.g.*, *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993) (upholding decision to use Atlanta as the relevant market to determine reasonable hourly rate for a voting rights case filed and tried in Brunswick, Georgia).

PLN seeks compensation for the work of its attorneys based on the following hourly rates:[10]

---

[10] The hourly rate sought for Teresa Knight, paralegal to Brian Spears, is $95.00, which is a rate at which Ms. Knight has previously received compensation in prior fee awards.  (Spears Decl. ¶ 3.)

| Attorney | Hourly Rate | Attorney | Hourly Rate |
|---|---|---|---|
| Gerald Weber | $520.00 | Lance Weber | $400.00 |
| Brian Spears | $450.00 | Alissa Hull | $225.00 |
| Jeff Filipovits | $250.00 | Robert Jack | $225.00 |
| Albert Wan | $275.00 | Monique Roberts | $200.00 |

These rates are reasonable regardless of whether the court uses Atlanta or Athens as the relevant market.  Atlanta would be the more appropriate choice given the range of complexities presented by PLN's claims.[11]  As this Court has observed the issues involved in this litigation were complex and "multifaceted."  (D.E. 102 at 2.)  There are few attorneys in Atlanta and none in Athens, Georgia, and the Middle District of Georgia, generally, who have the experience and expertise to litigate a case like this one from start to finish.  (Jones Decl. ¶ 16.)  This opinion is shared by PLN's expert witnesses, including Janet Hill and Ed Tolley, two longtime practitioners before this Court.  (Hill Decl. ¶¶ 12-14; Tolley Decl. ¶¶ 5; Jones Decl. ¶¶ 16-17; Bramlett Decl. ¶ 11.)  Expertise aside, it is also true, as attested to by PLN's expert witnesses, that most Athens-based attorneys would tend to shy away from a case like this one because of the substantial risks it would have presented to local counsel even those who have handled Section 1983 claims in the past.  (Jones Decl. ¶¶ 11, 16; Bramlett Decl. ¶ 11.)  The fact that PLN could only afford to hire counsel on a contingency fee basis is but one such risk (*see* Jones Decl. ¶ 11; Bramlett Decl. ¶ 11), and this risk was especially pronounced  here where, as this Court stated in its bench trial order, "[t]he path provided by legal precedent has not been a clear one."  (D.E. 102 at 2.)  Accordingly, the Court should look to Atlanta rather than to Athens, and the Middle District

---

[11] Using Atlanta as the relevant market for a case like this is not unusual.  As the Seventh Circuit has observed in the civil rights context: "Attorneys with specialized skills in a narrow area of law . . . tend to be found in large cities where an attorney may have a greater opportunity to focus on a narrow area of law."  *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982).

generally, as the "relevant market" by which to judge the reasonableness of counsel's hourly rates.[12]

The evidence submitted by PLN as part of this fee petition reflects that the prevailing rates charged by Atlanta-based attorneys of comparable skills, experience and reputation range from $400.00 to $700.00 for Brian Spears and Gerald Weber, and from $175.00 to $ 375.00 for Albert Wan, Jeff Filipovits, and Lance Weber.[13]  (Jones Decl. ¶¶ 8, 15.)  The rates charged by PLN's attorneys are therefore reasonable and, on average, even less than what comparable attorneys in Atlanta would charge for handling cases of like difficulty and complexity.  (Jones Decl. ¶ 15; Bramlett Decl. ¶ 10.)

## III.   The Costs Claimed by PLN in this Fee Petition are Reasonable and Should Be Made a Part of this Court's Fee Award to PLN.

42 U.S.C. § 1988 authorizes a prevailing party like PLN to recoup the costs that it incurred in bringing a successful lawsuit under Section 1983.  42 U.S.C. § 1988.  This includes "all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case …."  *Dowdell*, 698 F.2d at 1192.  The Eleventh Circuit has emphasized that "the standard of reasonableness [used in determining when to award costs under

---

[12] Should this Court disagree with PLN that Atlanta represents the relevant market for purposes of determining counsel's hourly rate, PLN has provided this Court with evidence that counsel's rates should also be considered reasonable on the basis of Athens rates, even if they do not all fall in the low range of Athens rates.  (Hill Decl. ¶ 10; Tolley Decl. ¶ 10.)  In this regard, the Court should consider that counsel would be justified in charging a premium for their services. *See Johnson v. Ga. Hwy Express, Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) ("An attorney specializing in civil rights cases may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience").

[13] Even though Lance Weber represents PLN "in-house", he is still entitled to be compensated for his work "as a lawyer participating in this litigation" through a fee-shifting statute like Section 1988, *see Del. Valley Citizens' Council for Clean Air v. Comm. of Del.*, 762 F.2d 272, 278 (3d Cir. 1985), and the rate to which he is entitled is one "equal to [what his] counterparts in expertise [would charge] in private practice."  *Ramos v. Lamm* 713, F.2d 546, 555 (10th Cir. 1983).

Section 1988] is to be given a liberal interpretation." *Id.* (citing *Gates v. Collier*, 616 F.2d 1268, 1275 (5th Cir. 1980)).  To that end, "the Eleventh Circuit and district courts in this Circuit uniformly have allowed recovery of such expenses as photocopying, postage, long distance phone calls, necessary travel, and on-line research.  *Lambert*, 151 F. Supp. 2d at 1376 (collecting cases).  The costs recoverable under Section 1988 are not limited to those for which reimbursement is authorized under 28 U.S.C. § 1920, the taxable costs statute.  *Mallory v. Harkness*, 923 F. Supp. 1546, 1557 (S.D. Fla. 1996) ("[B]ecause the Plaintiff has sought attorney's fees under 42 U.S.C. § 1988, the traditional limits of 28 U.S.C. § 1920 do not restrict recovery of costs").

PLN seeks reimbursement of $11,871.76 in case-related expenses.  The expenditures on the part of PLN reflect payments for items that were both reasonable and necessary to the ability of PLN's counsel to effectively prosecute PLN's claims before this Court.  (L. Weber Decl. ¶ 12.)  Moreover, PLN has exercised billing judgment in compiling its bill of costs so that any costs that PLN considered unnecessary or redundant have been removed.  (*Id.*)  The itemized statements describing in detail the costs incurred by PLN are available as attachments to the Declarations of Lance Weber (last page of Exhibit 5 [$11,641.21 in costs]) and Albert Wan (Exhibit D [$230.55 in costs]).[14]

## CONCLUSION

This was a long, complicated and hard-fought case (on both sides).  Thanks to the hard work and dedication of PLN's attorneys, PLN and other publishers are now able to send their publications to inmates at the Walton County jail, something that wasn't possible before PLN

---

[14] The claimed costs do not include the money PLN has paid to hire Ron McAndrew, its expert witness in this case (L. Weber Decl. ¶ 12), since such costs are not recoverable under Section 1988, *see W. Va. Univ. Hospitals v. Casey*, 499 U.S. 83 (1991).

brought suit against the defendants.  The amount sought in this petition reflects the measure of success achieved by PLN and the time reasonably expended by PLN's attorneys to get the defendants to permanently change their unduly restrictive mail policies.  Accordingly, this Court should compensate PLN's attorneys for all the expenses and time claimed in this petition at counsel's prevailing rates.

Respectfully submitted this 25th day of November 2014.

/s Brian Spears, Esq.
G. Brian Spears, Esq.
(Georgia Bar No. 670112)
1126 Ponce de Leon Avenue
Atlanta, Georgia 30306
404-872-7086 – Tele.
404-892-1128 – Fax
bspears@mindspring.com

/s Gerald Weber, Esq.
Gerald Weber, Esq.
(Georgia Bar No. 744878)
P.O. Box 5391
Atlanta, Georgia 31107
(404) 522-0507 – Tele.
wgerryweber@gmail.com

/s Albert Wan, Esq.
Albert Wan, Esq.
(Georgia Bar No. 334224)
215 Church Street
Suite 110
Decatur, Georgia 30030
(404) 872-7760 – Tele.
(404) 872-7764 - Fax
albert@albertwanlaw.com

/s Jeffrey Filipovits, Esq.
Jeffrey R. Filipovits, Esq.
(Georgia Bar No. 825553)
2900 Chamblee Tucker Road
Building 1
Atlanta, Georgia 30341
(770) 455-1350 – Tele.
(770) 455-1449 – Fax
jrfilipovits@gmail.com

/s Lance Weber, Esq.
Lance Weber, Esq.
*Admitted Pro Hac Vice*
Human Rights Defense Center
P.O. Box 1151
Lake Worth, Florida 33460
(561) 360-2523 – Tele.
(866) 735-7136 – Fax
lweber@humanrightsdefensecenter.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF notification system which electronically sends a copy of the filing via email the

following counsel of record:

Andrew H. Marshall
dmarshall@athens1867.com
BEGNAUD & MARSHALL, LLP
1091-B Founders Boulevard
Post Office Box 8085
Athens, Georgia, 30603

This the 25th day of November 2014.

/s/ Albert Wan
Albert Wan, Esq.
(Georgia Bar No. 334224)

Law Office of Albert Wan, P.C.
215 Church Street
Suite 110
Decatur, Georgia 30030
404-872-7760
albert@albertwanlaw.com