IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS, a Project of THE HUMAN RIGHTS DEFENSE CENTER, a Not-for-Profit Corporation, Incorporated in the State of Washington, | : : : : : : | |
| Plaintiff, | : : | |
| v. | : : | CIVIL ACTION No. 3:12-CV-00125 (CAR) |
| JOE CHAPMAN, the Sheriff of Walton County, Georgia, and WADE HARRIS, Jail Commander for Walton County Jail, in their official and individual capacities, | : : : : : : | |
| Defendants. | : : | |

**Order on Motion for Attorneys' Fees**

Plaintiff Prison Legal News ("PLN" or "Plaintiff") filed a civil rights lawsuit under 42 U.S.C. § 1983 against Defendants Sheriff Joe Chapman and Jail Commander Wade Harris in their official and individual capacities. Plaintiff claimed that Defendants violated their First and Fourteenth Amendment rights by enforcing certain mail policies that unlawfully restricted Plaintiff's means of communicating with inmates in the Walton County Jail. After a bifurcated bench trial addressing the issues of liability and equitable relief, the Court found for Defendants on one of Plaintiff's First Amendment claims, finding Defendants' "post-card only" policy constitutionally sound. However,

1

the Court found for Plaintiff on its two other claims, finding Plaintiff was entitled to declaratory relief as to its publication ban and due process claims, as both were unconstitutional under the First and Fourteenth Amendments respectively. Plaintiff timely moved for an award of attorneys' fees and expenses under 42 U.S.C. § 1988 [Doc. 106]. Defendants oppose Plaintiff's request as unreasonable. After thorough consideration, the Court **GRANTS** Plaintiff's Motion for Attorneys' fees and costs [Doc. 106] and awards fees in the amounts specified below.

## Discussion

Plaintiff seeks attorneys' fees under § 1988(b), which specifically allows attorneys bringing claims under § 1983 to seek fees. Although under the "American Rule" courts generally do not award fees to the prevailing party in a civil suit, under fee shifting provisions, like § 1988, Congress has allowed for a "prevailing party" to seek an award of attorney's fees.[1]

In order to be a prevailing party under § 1988(b), there must be a court-ordered "material alteration of the legal relationship of the parties."[2] In other words, if Plaintiff has succeeded on "any significant issue…which achieved some of the benefit the parties sought in bringing the suit," they are considered the "prevailing party."[3] However,

---

[1] *Smalbein ex rel Estate of Smalbein v. City of Daytona Beach*, 353 F. 3d 901, 904 (11th Cir. 2003).
[2] *Buckhannon Board & Care Home, Inc., W. Va. Dept. of Health & Human Res.* 532 U.S. 598, 604 (2001).
[3] *Smalbein*, 353 F. 3d at 907 (citations omitted).

2

finding that the Plaintiff is a prevailing party is merely a "statutory threshold."[4] After the court makes this finding, it is then tasked with determining what constitutes a "reasonable" fee.[5]

Because the Court found for Plaintiff on two of its three claims, Defendants argue that Plaintiff did not achieve sufficient success to warrant attorneys' fees, and, additionally, that the fees sought are unreasonable. However, there can be little doubt that Plaintiff has materially altered its relationship with Defendants and achieved a significant benefit in bringing this suit. Accordingly, the Court finds that Plaintiff is the prevailing party and thus meets the threshold requirement for receiving attorneys' fees. However, the Court agrees that Plaintiff's fee request should be reduced; the Court now turns its discussion to the "reasonableness" of Plaintiff's request for attorneys' fees.

### 1. The Lodestar Calculation

A reasonable attorneys' fee award under § 1988 is properly calculated under the "lodestar" by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.[6] Once the lodestar is determined, it "can then be adjusted according to the results obtained by the plaintiff."[7] Here, Plaintiff, as the fee

---

[4] *Hensley v. Eckhart*, 461 U.S. 424, 433, (1983).
[5] *Id*.
[6] *American Civil Liberties Union of Georgia v. Barnes*, 168 F. 3d 423 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1984)).
[7] *Id*. (*citing Loranger v. Stierheim*, 10 F. 3d 776, 781 (11th Cir. 1994))*.

3

applicant, bears the burden of establishing the reasonableness of its fees.[8] In making this calculation, the court should exclude hours that are "excessive, redundant, or otherwise unnecessary," and thus not "reasonably expended."[9]

Factors the court should consider in calculating an award include: (1) the time and labor required; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the expertise, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[10]  Ultimately, the trial court has the discretion to determine reasonable attorneys' fees: "The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[11]

In the present case, Plaintiff is requesting the amount of $239,464.75 for 739.08 hours spent on this case. The total hours presented to this Court represent the work of

---

[8] *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).
[9] *Hensley*, 461 U.S. at 434.
[10] *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *abrogated in part on other grounds, Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990).
[11] *See Norman*, 836 F.2d at 1303 (citations omitted).

nine legal professionals, eight of whom are attorneys, and one of whom is a paralegal. Plaintiff requests the following hourly rates for the attorneys: Gerald Weber $520; Brian Spears $420; Lance Weber $400; Albert Wan $275; Jeff Filipovits $250; Alissa Hull $225; Robert Jack $225; Monique Roberts $200. For the one paralegal on the case, Teresa Knight, Plaintiff requests $95 per hour. Having considered the parties' briefs and the various factors listed above, as well as its own knowledge and experience, the Court finds Plaintiff's request for fees unreasonable and excessive and cuts them accordingly.

    a.  *Reasonableness of Fees*

In determining reasonable attorneys' fees, district courts "are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."[12]  Moreover, § 1988 "is a tool that ensures the vindication of important rights."[13] It was not intended to produce windfalls or be "a relief Act for lawyers."[14] The Court recognizes that Plaintiff has attempted to cut its fees in various ways including an across-the-board 10% cut.[15] However, for the following reasons, the Court finds that to reward Plaintiff the fees they request would create an inappropriate windfall.

---

[12] *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).
[13] *Farrar v. Hobby*, 506 U.S. 103, 122 (1992).
[14] *Riverside v. Rivera*, 477 U.S. 561, 588 (1986) (Rehnquist, J., dissenting).
[15] Gerald Weber cut his fees by 15%.

There is no doubt that Plaintiff is in the business of vindicating prisoners' rights.[16] In fact, Plaintiff has been filing similar suits to this one across the country since 1997.[17] In these cases, Plaintiff has received a range of attorneys' fees from $32,000 to $800,000.[18] The largest award was in a case that was being litigated simultaneously to this one and involved very similar issues and even overlapping lawyers—Lance Weber and Alissa Hull.[19]

It is clear to the Court, that given its history of litigation in this area, Plaintiff's system of asserting prisoner's rights is a well-oiled machine. In fact, Lance Weber is currently engaged in similar suits in Florida and Nevada.[20] Therefore, considering the familiarity the lawyers on this case have with Plaintiff's various suits and expertise in the area, the Court is simply shocked that highly experienced lawyers such as Gerald and Lance Weber, and Brian Spears, required each other's assistance, let alone the assistance of <u>five</u> additional, less-experienced attorneys, especially where, in contrast, Defendants had merely <u>one</u> attorney throughout the entire litigation process. Moreover, the Court finds that there was nothing particularly exceptional or impressive about the

---

[16] *See* Prison Legal News, Legal Action, https://www.prisonlegalnews.org/legal-action-map/ (last visited August 18, 2015).

[17] *Humanists of Washington v. Lehman*, No. 97–CV–05499–FDB–JKA (W.D.Wash. 1999).

[18] *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (combined fees and cost award of $137,502.46); *Prison Legal News v. Columbia Cnty.*, No. 3:12-CV-00071-SI, 2014 WL 1225100, at *1 (D. Or. Mar. 24, 2014), *appeal dismissed* (July 1, 2014) (combined fees and cost award of $802,000); *Prison Legal News v. Umatilla Cnty.*, No. 2:12-CV-01101-SU, 2013 WL 2156471, at *10 (D. Or. May 16, 2013) (combined fees and cost award of $32,763.69).

[19] *Prison Legal News v. Columbia Cnty.*, No. 3:12-CV-00071-SI, 2014 WL 1225100, at *1.

[20] Lance Weber Dec., Doc. 106-5 at 4.

legal work performed by Plaintiff's attorneys, except their ingenuity in generating legal fees.

Furthermore, the Court finds that this case was not so complex as to merit such excessive legal fees. It presented neither factual nor legal issues that were especially complex, difficult, or novel. This case was a relatively straightforward challenge on First and Fourteenth Amendment grounds to a jail's mail policies—a factual and legal scenario that Plaintiff has been litigating nationwide and one with which Plaintiff's seasoned attorneys were very familiar.[21]

The Court recognizes, as Plaintiff points out, that having multiple lawyers on a case is not "inherently unreasonable."[22] However, the Court finds that given Plaintiff's familiarity with this type of litigation, <u>eight</u> lawyers and only <u>one</u> paralegal was excessive overstaffing and fundamentally unreasonable.[23] Moreover, on several occasions the Court expressed its incredulity over Plaintiff's need for so many attorneys on this case.

Most pointedly, at a hearing on September 24, 2013, the Court asked Plaintiff why it had four attorneys present, to which Plaintiff responded that this case involved

---

[21] Moreover, the Court explicitly told Plaintiff that the Court did not consider this to be a complex case at the September 24th hearing. *See* Doc. 53. See also Doc. 109-4 (Plaintiff's attorney's relayed to the Court that the "law is relatively straightforward and the facts…are easily within the ken of an average juror.")
[22] *American Civil Liberties*, 168 F. 3d, at 432.
[23] *Hensley*, 461 U.S. at 434 (noting that in determining reasonableness "cases may be overstaffed").

various complex issues. The Court, entirely unconvinced, proceeded to inform Plaintiff that the nature and complexity of the claims at issue do not justify such an excess of attorneys on the case, and the Court instructed Plaintiff that two attorneys would be more than sufficient.[24] Later, Ms. Hull withdrew as an attorney in the case; however, Plaintiff proceeded to <u>add</u> <u>two</u> <u>more</u> attorneys both of whom never made an appearance, nor were they admitted to practice in this Court or licensed in the State.[25] The Court finds adding two "supporting" attorneys, Mr. Jack and Ms. Roberts, to the litigation after the Court's explicit admonishment was flagrant and superfluous. Plaintiff's persistence in maintaining so many attorneys, as well as adding more, despite the Court's instruction on the point, can only be seen as Plaintiff thumbing its nose at the Court and a blatant disregard for the reasonableness required under the fee-shifting provisions of § 1988. Indeed, the Court finds that Plaintiff's excessive number of attorneys led directly to an unreasonable accumulation of billed hours and fees.

For example, Plaintiff claims it gave the lower-billing attorneys the "most time-consuming tasks,"[26] and in doing so created a strict division of labor ultimately

---

[24] Doc. 53.

[25] *See Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1252 (10th Cir. 1998) (finding that the appellants were not entitled to reimbursement for an attorney that never made an appearance in the case because she failed to establish that her work was "actually necessary or essential").

[26] Pl. Mtn. for Attys' Fees, Doc. 107 at 14.

8

lowering the costs; however, the Court is unconvinced.[27]  For example, Plaintiff contends that Mr. Wan and Mr. Filipovits were tasked with making and responding to discovery requests and drafting the briefs, which they claim reduced the fees submitted.  However, Mr. Filipovits only billed fifty hours less than Gerald Weber and Lance Weber, both of whom billed over 140 hours respectively, and Mr. Wan only billed 20 hours more than Lance and Gerald Weber.

Additionally, although Mr. Filipovits and Mr. Wan were tasked with drafting the Complaint and Preliminary Injunction, which took them 36 hours and 19 hours respectively, Gerald Weber, Lance Weber, Brian Spears, and Alissa Hull all reviewed and revised the documents.  Plaintiff's review and revision process through the various attorneys led to the accumulation of 94 hours billed for the Complaint and Preliminary Injunction alone.  These numbers would be large even if this was Plaintiff's first complaint involving these types of claims, but it is extraordinary considering that most of the information could have been easily derived from the complaints Plaintiff has filed across the nation in its litigation practice. Similarly, Plaintiff tasked Robert Jack with drafting the trial brief. Mr. Jack took 16.6 hours to draft the brief, but Gerald and Lance Weber almost doubled that, by taking 14.6 hours to review and revise it.

---

[27] Plaintiff has simply failed to convince the Court that its division of labor led to reasonable accumulation hours; however, the Court notes that Plaintiff's lawyers spent 6.5 hours conferencing over the topic. See Gerald Weber's Dec., Doc. 106-2 at 18; Lance Weber's Dec., Doc. 106-5 at 27, 32, 36, 37, 39.

Another example of excessive work, as Defendant points out, is where Mr. Wan spent time briefing a *Daubert* motion after the Court's ruling that it would not entertain such motions. Mr. Wan avers that he performed this task in order to give trial counsel a basis for a motion just in case one was ultimately required. The Court finds such work unnecessary, especially were the Court has already made its ruling and four seasoned trial lawyers were present to handle any unexpected contingency.

Additionally, the Court finds that 17.7 hours of research and drafting memos on relevant cases decided by this Court on similar subjects in the past unnecessary, especially where Gerald Weber has appeared before this Court in the past and a quick Westlaw search would succinctly reveal the required information. Finally, as noted above, the Court finds that the issues in this case are simply neither legally nor factually complex enough to warrant <u>eight</u> attorneys stacking up 781.65 hours in fees.

When reviewing an application for attorney's fees, the court may appropriately consider "whether the work performed was 'legal work in the strict sense' or was merely clerical work that happened to be performed by a lawyer."[28]  In other words, attorneys should not receive full compensation for performing tasks that should have been delegated to non-lawyers.[29] For example, clerical tasks, such as "reorganizing discovery," "preparing document indexes," and "preparing deposition summaries" which were performed by Plaintiff's lawyers are tasks that should not have been billed

---

[28] *Ga. Hwy. Express, Inc.*, 488 F.2d at 717.
[29] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288, n. 10 (1989).

10

at a lawyer's rate because they are tasks better suited to a paralegal. Another example is that Gerald Weber and Jeff Filipovits played a supporting role at trial, handling issues related to Plaintiff's exhibits. An attorney that bills $520 an hour, let alone one that bills at $275, is not properly used at a trial to help with exhibits—these are tasks better suited to non-attorneys at non-attorney rates. Such profligate use of an attorney's time is simply unreasonable—no private client would pay for such excess, nor will this Court reward it.

Plaintiff also requests attorneys' fees for litigating its attorneys' fees. First, the Court assumes that counsel kept records of its work in the ordinary course of its business and no substantial time was required to compile or review those records. Secondly, the legal issues associated with a request for attorneys' fees are neither novel nor complicated. Although there is nothing inherently excessive about a request for fees associated with filing attorneys' fees,[30] Plaintiff's attorneys spent a total of 35.78 hours researching, compiling, and briefing this issue—this is excessive.

Therefore, for the various reasons stated above, the Court finds Plaintiff's hours unreasonable and should be reduced 50%, from 781.65 hours to 390.825 hours. However, the Court finds that Ms. Knight, Mr. Spears's paralegal, is entitled to her

---

[30] *Johnson v. State of Miss.*, 606 F.2d 635, 638 (5th Cir. 1979).

17.75 hours and is excluded from the across-the-board cut. The Court now turns to the relevant market rate in order to complete its lodestar calculation.

### b. Reasonable Hourly Rate

A reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[31] The relevant legal market is generally the place where the case is filed.[32] The prevailing party "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates."[33]

This case was filed in Athens, Georgia in the Middle District of Georgia, and the events giving rise to this litigation occurred in and around Athens in Walton County. Four of Plaintiff's attorneys practice in the Metropolitan Atlanta area, and four have practices based outside of the State. Defense counsel's practice is in Athens.

Plaintiff argues that Atlanta is the relevant market because there were no attorneys in the Athens market willing or able to litigate this case. However, the Court finds that the Athens and Middle District of Georgia's legal market is highly sophisticated and boasts lawyers of all skills, including those who work on civil rights actions such as this one. Additionally, although the Court recognizes that civil rights

---

[31] *American Civil Liberties*, 168 F. 3d at 436 (quoting *Norman*, 836 F.2d at 1299).
[32] *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).
[33] *Norman*, 836 F. 2d at 1299.

cases are often risky due to the fact that these cases are taken on a contingency basis,[34] the Court does not find that the risks were such that attorneys in Athens, and the Middle District generally, would have been precluded from taking the case. Nor does the Court find that the legal questions here were so difficult that a well-seasoned local attorney could not have competently handled the case. In fact, an Athens attorney did and handled the defense entirely by himself. Therefore, the Court is unconvinced that there are no attorneys in the Athens area, or in the Middle District of Georgia generally, that could have competently litigated this case from start to finish. Accordingly, the Court finds that Athens, and not Atlanta, is the appropriate legal community for the purpose of determining reasonable hourly rates.

The Court recognizes the high level of legal competence in the area of civil rights litigation associated with Plaintiff's surfeit of lawyers, and in particular Gerald Weber, Lance Weber, and Brian Spears; however, the Court finds Gerald Weber's $520, Brian Spears's $420, and Lance Weber's $400 hourly rates to be excessive for the Athens community specifically and the Middle District generally. Accordingly, after considering the parties' arguments, weighing the various factors, and based on its own research, personal expertise, and experience, the Court finds $300 an hour a reasonable

---

[34] Lance Weber, Alissa Hull, Robert Jack, and Monique Roberts are all "in house counsel" at the Human Rights Defense Center. However, Plaintiff has presented to the Court that Plaintiff could only afford to hire counsel on a contingency fee basis. Therefore, the Court assumes that aforementioned attorneys were not salaried counsel, but were all engaged on a contingency basis. *See* Pl. Mtn. for Attys' Fees, Doc. 107 at 17.

13

rate in the Athens community for attorneys with similar experience and expertise as Gerald Weber, Lance Weber, and Brian Speers.[35] For the remaining attorneys in the case, the Court finds the reasonable rates for attorneys with similar experience and expertise in the Athens community to be as follows: Albert Wan $200; Jeff Filipovits $175; Alissa Hull $150; Robert Jack $150; Monique Roberts $150. The Court further finds $95 is a reasonable hourly rate for a paralegal in this market. Therefore, the Court calculates the lodestar by multiplying the relevant Athens hourly rate times the hours reduced by 50% as follows:

| Attorney | Hours Claimed | Hourly Rate | Hours After 50% reduction | Total Fee |
|---|---|---|---|---|
| Gerald Weber | 148 | $300 | 74 | $22,200 |
| Brian Spears | 73.75 | $300 | 36.88 | $11,064 |
| Lance Weber | 146.4 | $300 | 73.2 | $21,960.00 |
| Albert Wan | 183.84 | $200 | 91.92 | $18,384 |
| Jeff Filipovits | 93.21 | $175 | 46.61 | $8,156.75 |
| Alissa Hull | 57.1 | $150 | 28.55 | $4,282.50 |
| Robert Jack | 52 | $150 | 26 | $3,900 |

---

[35] Plaintiff has submitted two affidavits from lawyers in the Athens legal community, Janet Hill, and Edward Tolley. Doc. 106-7; Doc. 106-9. Ms. Hill stated that lawyers with comparable litigation experience could bill $300-450 per hour, and Mr. Tolley asserted that $350-390 per hour was the going market rate for lawyers with similar experience. Although the Court gives "weight" to these statements, the Court need not accept them as "gospel." *See American Civil Liberties*, 168 F. 3d at 430.

| | | | | |
|---|---|---|---|---|
| Monique Roberts | 9.6 | $150 | 4.8 | $720 |
| Teresa Knight (paralegal) | 17.75 | $95 | 17.75 | $1,686.25 |
| Total | | | | $92,353.50 |

Based on the above, the Court HEREBY ORDERS Defendants to pay Plaintiffs

**$92,353.50** in attorney's fees and **$11,871.76** in expenses.

**SO ORDERED,** this 29th day of September, 2015.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE
